Darrell ALGARIN, Dennis Rolon, Joseph Pirrone, James A. Mattatall, John Beltempo, Antonio Spano, Dan Negersmith, John DiMilia, Steve Walsh, Keith Borkenhagen, Kenneth King, Robert Scheuering, Kelly Scheuering, Brian Quinn, Chris Korba, Robert Kammarad, Brenda Caruso, Darrell Honkala, Frank Denardo, Paul Besser, Harry Dennis Lohr, Jr., Michael Orapello and Charles Bodensieck. Plaintiffs,

v.

TOWN OF WALLKILL, Oscar Dino, Jay Anthony, Frank Schumaci, George Green, sued in their individual capacities, Defendants.

No. 02 CIV. 6351(CM).

United States District Court, S.D. New York.

April 5, 2004.

Michael Howard Sussman, Goshen, NY, for Plaintiffs.

David E. Cassidy, Grotta, Glassman & Hoffman, P.A., New York, NY, James M. Fedorchak, Gellert & Cutler, P.C., Poughkeepsie, NY, for Defendants.

## MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

McMAHON, District Judge.

Plaintiffs, Darrell Algarin, Dennis Rolon, Joseph Pirrone, James A. Mattatall, John Beltempo, Antonio Spano, Dan Negersmith, John DiMilia, Steve Walsh, Keith Borkenhagen, Kenneth King, Robert Scheuering, Kelly Scheuering, Brian Quinn, Chris Korba, Robert Kammarada, Brenda Caruso, Darrell Honkala, Frank Denardo, Paul Besser, Harry Dennis Lohr, Jr., Michael Orapello, and Charles Bodensieck are police officers in the Town of Wallkill. They commenced this action alleging that Defendants—members of the Police Commission of the Town—issued a materially false report concerning "out of control" conditions in the department. Plaintiffs allege that this report—which named none of them individually—defamed them and maliciously deprived them of their right to liberty and substantive due process as guaranteed by the Four-

teenth Amendment and in violation of 42 U.S.C. § 1983.

Defendants, Town of Wallkill, Oscar Dino ("Dino"), Jay Anthony ("Anthony"), Frank Schumaci ("Schumaci"), and George Green ("Green"), have filed motions to dismiss Plaintiffs' complaint pursuant to Fed. R.Civ.P. 12(b)(6). They contend that the Commissioners are immune from suit for issuing the report, and that Plaintiffs have alleged nothing more than injury to reputation, which cannot form the basis for a defamation claim under 42 U.S.C. § 1983.

For the reasons stated below, the Defendants' motion is GRANTED.

## BACKGROUND

Unless otherwise noted, the following facts are taken from Plaintiffs' Complaint.

The Plaintiffs are twenty-three (23) police officers and supervising police officers who were employed by Defendant Town of Wallkill in July 2000. Defendants are the Town of Wallkill, a municipality located in Orange County, and four members of the Town of Wallkill Police Commission. Defendants, Dino, Schumaci, Anthony, and Green are sued in their individual capacities for actions they took as members of the Town of Wallkill Police Commission pursuant to the authority granted them by the Wallkill's Town Board pursuant to New York's Town Law § 150. Each Commissioner is a resident of the Town of Wallkill.

This case involves a report issued by the Police Commission in July 2000. The report described the Wallkill Police Department as a "problem" department.[1] The report reported a series of acts of alleged misconduct by unnamed officers and ser-

---

[1] For a complete recitation of the issues involving the Wallkill Police Department, the reader is referred to the Complaint and the Consent Judgment in *People ex rel Spitzer v.* *Town of Wallkill*, No. 01 Civ. 364(CM), as well as the periodic reports of the court-appointed monitor, Dean Esserman, which are filed with the Court and publicly available.

geants, as well as the Chief of Police, James Coscette. It used words like "corrupt", "lawless", and "out of control" to describe the police department. However, the report was careful not to identify any particular members of the department as being corrupt, lawless or out of control, and stated affirmatively, "We found that most of the officers we interviewed are dedicated to their work and truly interested in the welfare of the Town and its residents. The major problem appears to be with the leadership of the Department." Report at 9.

The Commissioners released the report at a press conference and disseminated it to the Middletown *Times Herald Record* (THR), an area newspaper that had and has reported extensively on issues involving the Wallkill police. The Town Board did not prevent the disclosure or distribution of the report.

At the time the report was released, the Police Commission had not successfully prosecuted a single case against any Plaintiff or any other Town of Wallkill police officer. (Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss at 2). Subsequent to the release of the report, the Town sought to discipline Plaintiffs Rolon, Walsh, DiMilia, Borkenhagen, Kelly Scheuring, Spano and Negersmith. Orapello and Negersmith were terminated. Caruso resigned. Some, though not all, charges were sustained against Rolan, Walsh, De Milia, Bordenhagen, Scheuring and Negersmith after arbitration. (Cplt. at 4–5).

In January 2001, the New York Attorney General filed a lawsuit in this court against the Town of Wallkill and its Police Department, alleging numerous instances of police misconduct and indicting the governance of the department. The lawsuit was resolved by the entry of a consent injunction and the appointment of a federal monitor to supervise the department. Pursuant to the injunction, all felony complaints in the Town of Wallkill were assigned to the State Police for investigation. Although seven months passed between the issuance of the report and the filing of the lawsuit, during which time the Attorney General investigated many of the charges made in the report, the complaint alleges that the federal lawsuit was filed "as a result" of the issuance of the report.[2]

Plaintiffs allege that the Commission's use of derogatory terms about the department, such as "lawless" and "out of control," stigmatized and defamed them because, as members of the small police force, each of them was clearly identifiable as a member of the group so described. They further allege that each of them was individually exposed to the negative impact of the report's allegations, without regard to whether any individual officer was himself "lawless" or "out of control." Plaintiffs claim that as a result of the report they suffered humiliation, disrespect, and embarrassment, as well as emotional and personal anguish. And they contend that, by using a broad brush to paint all Wallkill officers in a negative light, the Commissioners demonstrated malice. Plaintiffs also contend that the report's negative impact on each of them was compounded by the Attorney General's adoption of the report and the subsequent federal lawsuit,

**2.** The extent of the Attorney General's independent investigation is known to the Court because I am the presiding judge in the lawsuit brought by the Attorney General. The nature and extent of the problems within the department are known to the Court by virtue of the work of the Monitor, who reports to the court regularly concerning all aspects of the department's operations as part of my supervision of the settlement of the lawsuit. For purposes of this motion I limit myself to the allegations of the instant complaint, and where those allegations are factual and not conclusory, I assume them to be true.

which caused them additional embarrassment and humiliation.

Plaintiffs assert that, as a result of having their good names so besmirched, their careers suffered, in that they were unable to obtain other law enforcement jobs or transfers to other police departments. They ask for compensatory and punitive damages as well as attorneys' fees.

Defendants move to dismiss. They argue that the Commissioners were absolutely privileged to issue a report critical of the police department under their oversight—indeed, that they would have been derelict in their duty not to issue such a report—and to release it to the public as a matter of public importance. The Defendants also argue that the report does not stigmatize any of the Individual Plaintiffs—their names appear nowhere in the report—and that in fact the report consciously recognizes the strength of the majority of the officers. They further contend that the complaint does not allege that any of the Plaintiffs lost his or her job as a Wallkill Police Officer in the aftermath of the report's issuance, and thus argue that the complaint is subject to dismissal under the Supreme Court's decision in *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976).

## DISCUSSION

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of a complaint that fails to state a claim upon which relief can be granted. The standard of review on a motion to dismiss is heavily weighted in favor of the plaintiff. The Court is required to read a complaint generously, drawing all reasonable inferences from the complaint's allegations. *California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 515, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972). "In ruling on a motion to dismiss for failure to state a claim upon which relief may be granted, the court is required to accept the material facts alleged in the complaint as true." *Frasier v. General Electric Co.,* 930 F.2d 1004, 1007 (2d Cir.1991). The Court must deny the motion "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Stewart v. Jackson & Nash,* 976 F.2d 86, 87 (2d Cir.1992) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

▮ In this case, the complaint must be dismissed because the Individual Defendants are entitled to absolute immunity for the creation and issuance of the report.

The doctrine of absolute immunity protects "principal executive[s] of State or local government" from fear of suit regarding communications relating to their official duties. Pursuant to this doctrine, Defendants enjoy absolute immunity from suit resulting from the report they compiled, and statements they made in support thereof, in their capacity as police commissioners. Therefore, Defendants' motion to dismiss for failure to state a claim upon which relief may be granted is granted.

Absolute immunity is conferred upon government officials entrusted with significant "administrative or executive policy-making responsibilities." *Stukuls v. State of NY,* 42 N.Y.2d 272, 278, 397 N.Y.S.2d 740, 366 N.E.2d 829 (1977) Only officials who are principal executives of State or local government, or who are entrusted by law with administrative or executive policy-making responsibilities of considerable dimension are so immunized. *Id.* As Police Commissioners, duly appointed by the Town Board and with aspects of the Town's executive authority delegated to them pursuant to the Town Law, Defendants Dino, Schumaci, Anthony, and Green, are entrusted with such authority

and therefore are entitled to absolute immunity.

An Independent Board of Police Commissioners was established by the Town of Wallkill, pursuant to Town Law § 150, to regulate the Town Police Department and to exercise all powers relative to police matters conferred by Town Law. This law took effect July 13, 1981. (Defendant Police Commissioners' Notice of Motion and Motion to Dismiss, Exhibit A).

Town Law Section 150(2), McKinney's Town Law § 150(2), enables a town board to establish a board of police commissioners and to vest in that board *all of the powers delegated to the town board, in Article 10 of the Town Law insofar as they relate to police matters.* These powers include the power (1) to promote officers, Town Law § 152; (2) to "make, adopt and enforce rules, orders and regulations for the government, discipline, administration and disposition of the police department and of the members thereof," Town Law § 154; (3) to "provide...for the physical examination of any or all members of the police department by a duly qualified physician," Town Law § 154–a; (4) to "adopt and make rules and regulations for the examination, hearing, investigation and determination of charges, made or preferred against any member of such police department," Town Law § 155; (5) "to suspend, without pay, pending the trial of charges, any member of such police department," Town Law § 155; and (6) to vary prescribed hours of vacation and "grant annual vacation with pay," Town Law § 157.

Defendants contend that they issued their report pursuant to this authority. Plaintiffs disagree. They contend that because the Commissioners do not administer the day-to-day operations of the police department and do not pass legislation, they are not entitled to absolute immunity.

Plaintiffs' narrow construction of the authority of the Police Commission is inconsistent with New York law. The New York Attorney General, in an informal opinion regarding the scope of authority of the police commission and individual police commissioners, stated that a municipality's police commission and its commissioners are "responsible for running the police department." 1980 N.Y. Op.Atty.Gen. (Inf.) 249. Thus, as a matter of New York law, the Police Commissioners are the executive officials of the police department, entrusted with the management and oversight of the department and vested with authority to make all decisions necessary to carry out their role. The fact that they do not actually run the day-to-day operations of the Department, delegating that task to others, does not undermine this conclusion. For New York State law purposes, and thus for Federal constitutional law purposes, the Police Commission is the "final policy-making authority" for the Police Department.

Plaintiffs also argue that the issuance of an investigative report does not qualify as "setting policy," which is the Police Commission's sole function. I disagree. The powers delegated to the Commission under the Town Law are far from limited to "setting policy." Moreover, while no specific criteria exist for determining what responsibilities are sufficiently "administrative or executive policy-making" to lead to the application of absolute immunity for their exercise, looking into complaints from the public and the press about widespread police misbehavior and issuing a report addressing the Commission's findings falls comfortably within the sphere of covered activities.

The doctrine of absolute immunity exists, among other reasons, to permit high-ranking officials to be able to carry-out their official duties without fear of suit. *Stukuls*, 42 N.Y.2d at 275–276, 397 N.Y.S.2d 740, 366 N.E.2d 829. The Indi-

vidual Defendants' statutory authority to manage and oversee the Wallkill Police Department is analogous to that of an elected borough president, who is specifically empowered by statute to "govern and administer;" the State Commissioner of Education, who is the chief executive officer of the educational system; and other government officials entrusted with substantial executive powers—all of whom enjoy absolute immunity for their official acts. *Id.*, at 277, 397 N.Y.S.2d 740, 366 N.E.2d 829. Insofar as the operations of the police department are concerned, the Police Commissioners are not like employees and other "inferior" state actors, who are afforded only qualified immunity. *Id.* They are specifically empowered by statute to administer all affairs of the police department. It is inconceivable to think that a body so empowered did not have the authority—indeed, the obligation—to investigate a cascade of complaints about departmental operations and to prepare a report chronicling its findings. It is equally inconceivable that this body would not be privileged to release a report on a matter of such tremendous public importance to the public.

I am constrained to disagree with any suggestion that the Individual Defendants' statutory authority to investigate and determine charges pursuant to Town Law § 155 is limited to charges made against individual police officers, and does not encompass the public indictment, in the press and in various court cases (some filed in this court), of the department's operations as a whole. Neither am I persuaded that the Police Commission's authority "to adopt and enforce rules, orders and regulations for the government and discipline .... of the police department and of the members thereof" (Town Law § 154) immunizes only its legislative acts, but not investigative activities relating to the department's operations that could (and in this case did, albeit by judicial fiat) lead to

new rules, orders and regulations for the government and discipline of the department. If the Police Commission, as the "final policy-maker" for the Department, were to have ignored the panoply of complaints about the behavior of its officers and the lax administration of the department, the Individual Defendants would have subjected the Town to considerable liability for citizen claims, on the theory that the "final policy-maker" tolerated a pattern and practice of police misconduct rising to the level of official policy in the Town of Wallkill. Section 154 fairly and necessarily implies the power, and the duty, to look into allegations that the department is being mismanaged and that officers are routinely committing acts of police misconduct. Indeed, if the Police Commission, acting pursuant to what the Attorney General of New York calls its responsibility for "running the police department," does not have this power, then I am hard-pressed to fathom exactly who does.

Because I dismiss the complaint on this ground, I need not reach the Individual Defendants' alternative argument that Plaintiffs have failed to meet the "stigma-plus" pleading standard of *Paul v. Davis.*

■ Liability against the Town of Wallkill is presumably premised on the liability of the Individual Defendants, pursuant to the *Monell/Pembaur* doctrine. *Monell v. Dept. of Social Services,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611(1978); *Pembaur v. Cincinnati,* 475 U.S. 469, 479–80, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). Since the claims against the Individual Defendants are being dismissed, the claims against the Town are dismissed as well.

This constitutes the decision and order of the Court.

The Clerk is directed to enter judgment for Defendants and to close the file.