Darrell ALGARIN, Dennis Rolon, Joseph Pirrone, James A. Mattatall, John Beletempo, Antonio Spano, Dan Negersmith, John Dimilia, Steve Walsh, Keith Borkenhagen, Kenneth Hassan King, Robert Scheuering, Kelly Scheuering, Brian Quinn, Chris Korba, Robert Kamarada, Brenda Caruso, Darrell Honkala, Frank Denardo, Paul Besser, Harry Dennis Lohr, Jr., Michael Orapello and Charles Bodensieck, Plaintiffs–Appellants,

v.

TOWN OF WALLKILL, Oscar Dino, Jay Anthony, Frank Schumaci, George Green, sued in their individual capacities, Defendants–Appellees.

Docket No. 04–2607–CV.

United States Court of Appeals, Second Circuit.

Argued: May 18, 2005.

Decided: Aug. 30, 2005.

Stephen Bergstein, Thornton, Bergstein, & Ullrich, LLP, Chester, NY, for Plaintiffs–Appellants.

David E. Cassidy, Florio & Perrucci, LLC, Phillipsburg, NJ, for Defendant–Appellee, Town of Wallkill.

James M. Fedorchak, Gellert & Cutler, Poughkeepsie, NY, for Defendant–Appellees Dino, Anthony, Schumaci, and Green.

Before: MESKILL, NEWMAN, and CABRANES, Circuit Judges.

JON O. NEWMAN, Circuit Judge.

This appeal presents the issue of whether, in a suit under 42 U.S.C. § 1983, allegedly defamatory statements sufficiently identified the alleged victims to satisfy the

requirements of a so-called "stigma plus" claim, *i.e.,* a claim of a stigmatizing statement plus a deprivation of a tangible interest such as government employment, *see Patterson v. City of Utica,* 370 F.3d 322, 330 (2d Cir.2004).[1] The Plaintiffs–Appellants, twenty-three current or former members of the Wallkill, New York, police department, appeal from the May 4, 2004, judgment of the District Court for the Southern District of New York (Colleen McMahon, District Judge), dismissing their complaint, brought under section 1983, against the Town of Wallkill and its four police commissioners. The complaint was based on the contents of an allegedly false investigative report ("the Report"). Although the complaint was dismissed on grounds of immunity, we conclude, without considering the immunity issue, that the Report did not identify any of the plaintiffs sufficiently to constitute a viable "stigma plus" claim. We therefore affirm.

## Background

Wallkill maintains a Police Commission of four volunteer individuals to supervise its police department pursuant to N.Y. Town Law §§ 150–57. In July 2000, the Commission published the Report, which was critical of the town's police department and especially its Chief. The Report named no names nor linked any officer to misconduct except the Chief of Police, who is not a party to this action. The Town's counsel advised against release of the Report, but it was given to the local paper and other media. The Plaintiffs claim that the "vast preponderance" of the allegations in the Report were false. Two officers, already on probation at the time the Report was released, were terminated, and the Report allegedly caused the resignation of another officer. The Town allegedly sought to "terminate or discipline" another seven officers. The Plaintiffs claim that the Report "besmirched and sullied" their names, caused them humiliation, disrespect, and emotional harm, and caused other police departments to fear hiring Wallkill officers, resulting in denial of transfers.

Rather than attempt to pursue state court remedies for defamation, the Plaintiffs filed this section 1983 suit in the District Court in August 2002, endeavoring to allege a so-called "stigma plus" claim, a type of denial of liberty without due process of law. The District Court granted the Town's motion to dismiss the complaint on the ground that the four Police Commissioners enjoyed "absolute immunity for the creation and issuance of the [R]eport," *Algarin v. Town of Wallkill,* 313 F.Supp.2d 257, 260 (S.D.N.Y.2004), and that the Town could have no liability in the

---

1. The phrase "stigma plus" appears to have begun life as "stigma plus failure to re-hire/discharge," *Colaizzi v. Walker,* 542 F.2d 969, 973 (7th Cir.1976), based upon the teachings of *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), *see Colaizzi,* 542 F.2d at 972–73. One month after *Colaizzi,* an Illinois district court made what appears to be the first usage of "stigma plus," *see Danno v. Peterson,* 421 F.Supp. 950, 954 (N.D.Ill.1976) (internal quotation marks omitted), and that formulation was used by the Fifth Circuit a year later, *see Moore v. Otero,* 557 F.2d 435, 437 (5th Cir.1977). The phrase appears to have entered the Second Circuit lexicon almost twelve years later. *See Neu v. Corcoran,* 869 F.2d 662, 667 (2d Cir.1989). The term "defamation-plus" is occasionally used as a substitute. *See Aponte v. Calderon,* 284 F.3d 184, 196 (1st Cir.2002) (internal quotation marks omitted).

When used as an adjective, the phrase usually appears without a hyphen, *see, e.g., Siegert v. Gilley,* 500 U.S. 226, 234, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991); *Sadallah v. City of Utica,* 383 F.3d 34, 36 (2d Cir.2004), but occasionally with a hyphen, *see, e.g., Patterson v. City of Utica,* 370 F.3d 322, 328 (2d Cir.2004).

absence of liability of the individual defendants, *see id.* at 262.

The District Court reasoned that, as a matter of state law, "[a]bsolute immunity is conferred upon government officials entrusted with significant 'administrative or executive policy-making responsibilities,'" *id.* at 260 (citing *Stukuls v. State,* 42 N.Y.2d 272, 278, 397 N.Y.S.2d 740, 744, 366 N.E.2d 829 (1977)), and that the Commissioners' issuance of the Report qualified as "setting policy," *id.* at 261, for which absolute immunity was available, *see id.* The Court implicitly assumed that state law immunity provided a defense to section 1983 liability, at least in circumstances where an element of the section 1983 constitutional tort was the state law tort of defamation.

## Discussion

■■■ We may affirm on any ground supported by the record, *see, e.g., Ore & Fertilizer Corp. v. SGS Control Servs.,* 38 F.3d 1279, 1286 (2d Cir.1994), and in this case, we turn initially to the issue of whether the Report sufficiently identified any of the plaintiffs to support a "stigma plus" claim. "[A]n individual plaintiff must be clearly identifiable [in an allegedly defamatory statement] to support a claim for defamation." *See Abramson v. Pataki,* 278 F.3d 93, 102 (2d Cir.2002) (citing *New York Times Co. v. Sullivan,* 376 U.S. 254, 288–89, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964)). As the complaint in this case acknowledges, the Report was written "[w]ithout naming names or associating alleged incidents . . . with specific officers." Nor does the complaint set forth circumstances from which to infer the identity of any particular officers who might be understood to have been the subject of any defamatory allegations in the Report. *See DeBlasio v. North Shore University Hospital,* 213 A.D.2d 584, 584, 624 N.Y.S.2d

263, 264 (2d Dep't 1995) ("[W]here the person defamed is not named in a defamatory publication, it is necessary, if it is to be held actionable as to him, that the language used be such that persons reading it will, in the light of the surrounding circumstances, be able to understand that it refers to the person complaining.") (citation omitted); 1 Robert D. Sack, *Sack on Defamation, Libel, Slander and Related Problems* § 2.9.1 at 2–128–30 (3d ed.2005) (person need not be mentioned by name if identity readily understood). In the pending case, it is impossible to directly tie any of the statements in the Report to individual officers (except the Chief who is not a plaintiff) without information not contained in the Report.

Although the Plaintiffs recognize that the Report does not identify any of them, they nonetheless defend the sufficiency of their defamation allegations on the theory that each is a member of a group, the Wallkill Police Department, that has been defamed. Under some circumstances, courts have permitted an unnamed member of a group to maintain a claim for defamation where a defamatory statement has been made against the group. *See* Sack, *supra,* § 2.9.4 (collecting cases). Whether such a claim suffices presents "thorny questions." *Id.* § 2.9.4.1., at 2–134.

Often the size of a group is critical to the sufficiency of a claim by an unnamed member of a group. *Compare Neiman–Marcus v. Lait,* 13 F.R.D. 311, 313, 316 (S.D.N.Y.1952) (claim by members of a group of 25 salesmen sufficient), *with Abramson,* 278 F.3d at 102 (claim by members of a group of more than 1,000 people insufficient). *See* Restatement (Second) of Torts § 564A cmt. b. (1977) ("It is not possible to set definite limits as to the size of the group or class, but the cases in which recovery has been allowed usually have involved numbers of 25 or fewer.").

The Plaintiffs rely on *Brady v. Ottaway Newspapers, Inc.*, 84 A.D.2d 226, 445 N.Y.S.2d 786 (2d Dep't 1981), in which the Appellate Division allowed libel claims to go forward for a group of at least 53 unindicted police officers out of a department of more than 70. *See id.* at 788 n. 1. Because the record does not indicate the size of the Wallkill Police Department, we cannot readily determine—based on the size of the group—whether statements made about unnamed individuals in the group would necessarily reflect upon all members of the group. It is likely, however, that in July 2000 the Department of this community of 13,000 residents (according to the 2000 census) was small.[2]

Another relevant circumstance is whether the defamatory statement refers to "all" or only "some" members of the group. *Compare Owens v. Clark*, 154 Okla. 108, 6 P.2d 755 (1931) (claim based on statement referring to some members of Oklahoma Supreme Court not sufficient), *with Fawcett Publications, Inc. v. Morris*, 377 P.2d 42 (Okla.1962) (claim based on statement referring to entire Oklahoma football team sufficient). The claim that the Appellate Division allowed in *Brady* concerned a statement made against *all* members of the group.[3]

Regardless of how rigorous or lenient the standards might be for permitting a member of a group to complain about defamatory statements directed at the group, the complaint in this case is plainly deficient. The Report not only made no de-

famatory statements about the entire Wallkill Police Department or even most of the police officers, it explicitly made the favorable finding that "most rank and file police officers are dedicated to their work and to serving the citizens of Wallkill." Although the Commission made recommendations to the Police Chief for disciplinary actions against some unnamed officers, the Report carefully explained, "The details of these actions will not be publicly discussed in this report in respect to the privacy interests of the police officers involved." The Report made one reference to "illegal" conduct, a private employer making cash payments to a few officers for off-duty security work, but the Report did not link this conduct to any particular officer.[4] The Report says that "[t]he major problem appears to be with the leadership of the Department," and singles out for most of its fire the Police Chief, who is not a plaintiff in this lawsuit. In sum, the Report is a conscientious effort by citizen-commissioners to identify and remedy serious administrative deficiencies in the Wallkill Police Department, and it does not provide a sufficient basis for a stigma plus claim by any of the Plaintiffs.

## Conclusion

The judgment of the District Court is affirmed.

---

2. The Department's website lists twenty-five employees in 2005. *See* http://www.townof-wall kill.com/towpd /personnel.htm (last visited Aug. 1, 2005).

3. The newspaper article in *Brady,* after noting that 18 officers had been indicted, stated:

We said at the time, and we still believe that the entire department was under a cloud. It is inconceivable to us that so

much misconduct could have taken place without the guilty knowledge of the unindicted members of the department. If so, they were all accessories after the fact, if not before and during.
*Brady,* 445 N.Y.S.2d at 787.

4. The Report noted that the practice of such payments "is contrary to sound police practice and fosters attitudes which potentially lead to corruption hazards."