2014 VT 43

## Linda Stone v. Town of Irasburg

[98 A.3d 769]

No. 13-125

Present: **Reiber, C.J., Skoglund, Robinson and Crawford, JJ., and Zimmerman, Supr. J. (Ret.), Specially Assigned**

Opinion Filed April 25, 2014

358

*Charles L. Merriman* and *James Pepper*, Legal Intern, of *Tarrant, Gillies, Merriman & Richardson*, Montpelier, for Plaintiff-Appellant.

*Philip C. Woodward* of *Woodward & Kelley, PLLC*, South Burlington, for Defendant-Appellee.

¶ 1. **Crawford, J.** Plaintiff Linda Stone sued the Town of Irasburg alleging that the selectboard had acted unlawfully in ordering her, as town treasurer, to raise her bond to $1,000,000.

Following plaintiff's inability to obtain the bond and her removal from office by the selectboard, she claimed the Town improperly raised her bond and prevented her from obtaining the bond. She sought monetary damages based on common law defamation, tortious interference with office, violation of the Vermont Constitution, and deprivation of due process. She also asserted that the Town was obligated to pay her attorney's fees pursuant to statute. In several different orders, the trial court granted the Town summary judgment on all counts. Plaintiff appealed. We affirm in part, and reverse and remand in part.

¶ 2. The record reveals the following facts. On March 2, 2010, plaintiff was elected treasurer of the Town of Irasburg at town meeting. The positions of town clerk and treasurer had previously been held by Barbara Lawson for twenty years. Lawson's granddaughter Danielle Ingalls held the position of assistant town clerk. After Lawson retired as clerk, the selectboard appointed Ingalls to the position pending the election.

¶ 3. At town meeting, plaintiff and Ingalls ran for both positions. Ingalls was elected town clerk; plaintiff was elected treasurer.

¶ 4. Tension between the selectboard and plaintiff developed almost immediately. On March 22, 2010, a member of the selectboard proposed that the Town's auditors perform an audit every two weeks for the first two months and every month thereafter. On March 30, 2010, the auditors complained to the selectboard that they were unable to balance the Town's books due to mistakes in the reports they received from the treasurer. The errors included changes in the amounts of payment orders, bills written for wrong amounts, transposition of figures, and mistakes in some budget categories.

¶ 5. The minutes of the April 5, 2010 selectboard meeting describe Ingalls' decision to obtain legal advice from the town attorney Duncan Kilmartin about what to do if the auditors could not balance the books. Kilmartin advised increasing the treasurer's bond limit from $500,000 to $1,000,000 if plaintiff could not satisfy the auditors. The minutes note that "Randy [Wells] made a motion to follow Duncan [Kilmartin]'s advice, Roger [Gagnon] seconded, approved."

¶ 6. In a subsequent undated letter, the selectboard gave plaintiff until April 19 to "settle and reconcile [her] accounts to the satisfaction of the auditors." The letter stated that the selectboard had notified the current bonding company of the

dispute and warned of the potential need for increased bonding limits and the appointment of an assistant treasurer.

¶ 7. The minutes of the April, May and June meetings describe continuing tension over plaintiff's performance. Plaintiff advised that she felt "set up" by the auditors and the town clerk. She admitted that she had made some mistakes and was seeking additional training for her position. During this period plaintiff sought to increase her bond limit to $1,000,000 by seeking the higher coverage from the Poulos Insurance Agency in Newport. The Poulos agent forwarded her request to the Cincinnati Insurance Co., which provided the required application forms, including a form for a statement from plaintiff's employer.

¶ 8. The dispute between plaintiff and the selectboard came to a head after a dispute arose concerning an envelope containing $200 which was received at the town offices as partial payment of property taxes for a particular taxpayer. The details remain contested but in broad strokes, the envelope containing the bills was received and placed overnight in the treasurer's safe. When plaintiff next looked at the envelope, it bore a taxpayer's name in handwriting. Since she believed that the envelope was unmarked when it went into the safe, she concluded that a member of the selectboard had opened her safe in her absence. One selectboard member had installed the safe and thus had access to the combination. The matter was discussed at the June 28, 2010 selectboard meeting.

¶ 9. The selectboard member suspected of opening the safe abstained from any decision, and the two remaining members of the selectboard responded to plaintiff's allegations in writing on July 1, 2010. In their fevered five-page letter, the board members made accusations of their own, stating that plaintiff had made "false accusations" against town officials, presented "false evidence," repeated the accusations when she was told they were false, and continued in her accusations "after acknowledging that [her] own 'supporters' doubt [her] honesty." The letter questioned plaintiff's truthfulness, honesty, reliability, and ability to perform the duties of Irasburg Town Treasurer. The letter stated that plaintiff had written the name on the envelope herself and then falsely accused the board member of opening the safe and writing the name. It accused her of "deliberate and malicious fabrication of evidence" and lying. It stated that her "pattern from the beginning [of her term as treasurer] has been to accuse others of being responsible for [her] failures."

¶ 10. The letter required plaintiff to increase her bonding limit from $500,000 to $1,000,000. The selectboard sent copies of the letter to the Vermont League of City and Towns (VLCT), which provided the bond then in effect. The letter explained that:

> It is your responsibility to obtain the bond, not ours. You will have to deal directly with VLCT and the bonding company. We are simply notifying them of the reasons for our order to you to increase your bond, and providing them with the evidence which you provided to us, so that they can make appropriate underwriting investigations and determinations.

The letter gave plaintiff ten days to obtain the bond, and stated that if she failed to comply, her position would be declared vacant.

¶ 11. During July, plaintiff renewed her efforts to obtain the higher bond from Cincinnati as well as other insurers. Cincinnati repeated its request for the employer statement which "tells [the bond company] about the job she will be doing and all the controls in place for the funds she will be overseeing."

¶ 12. In response, town attorney Kilmartin sent the insurer an email declining to fill out the statement on the ground that the selectboard was not plaintiff's employer and "lacks the most fundamental form of control over the person who collects and disburses tax monies." Kilmartin suggested that plaintiff presented an "underwriting risk which both Poulos and Cincinnati would want to evaluate." The selectboard wrote to plaintiff at the same time to tell her they were unwilling to fill out the employer's portion of the application. Despite her efforts, plaintiff was unable to obtain the higher bonding limit.

¶ 13. At the next meeting of the selectboard on July 12, 2010, the selectboard extended the deadline for the increased bonding limit to July 22, 2010. Plaintiff appeared at the meeting and attempted to defend her performance as treasurer.

¶ 14. On July 12, 2010, plaintiff filed suit. The initial complaint sought only to "permanently enjoin [the Town] from demanding an increase in [plaintiff's] bond." The court issued an ex parte temporary restraining order (TRO) in plaintiff's favor on July 15, 2010. Following a hearing, the court vacated the TRO four days later without prejudice to renewal. The court noted that plaintiff agreed that since the Town had allowed plaintiff until July 22,

2010 to obtain the bond, there was no imminent harm. The case was scheduled for a preliminary injunction hearing.

¶ 15. Plaintiff filed an amended complaint on July 22, 2010. She continued to seek an injunction enjoining the Town from seeking an increased bond and requested, alternatively, that the Town be required to cooperate with her in obtaining the bond.

¶ 16. On July 26, 2010, based on plaintiff's failure to obtain the increased bond, the selectboard met and declared the position of treasurer to be vacant. On July 27, the selectboard wrote to plaintiff to inform her of the termination of her position. On July 28, the selectboard met and appointed an interim treasurer and assistant treasurer.

## I. Litigation History

¶ 17. In August 2010, after the Town declared her position vacant, plaintiff filed a motion for a preliminary injunction seeking reinstatement and for a writ of mandamus "ordering the Selectboard to grant [her] full and unfettered access to her office and restore her control and custody of the Town's accounts, financial computer programs, and finances." The Town filed a series of motions opposing the request for an injunction, and also sought to dismiss the action for failure to state a claim. The court denied the motions to dismiss in December 2010.[1] The trial court concluded that plaintiff's claims that representatives of the Town had thwarted her efforts to obtain the increased bond by publishing false statements about her established a prima facie case for a "stigma-plus" civil rights claim for deprivation of a liberty interest in violation of the Fourteenth Amendment.[2]

¶ 18. The trial court commenced an evidentiary hearing on the motion for a preliminary injunction on January 31, 2011. The hearing continued through a second day on February 28, 2011. It was never completed because plaintiff's failure to win reelection at town meeting on March 7, 2011 rendered the claim for injunctive relief moot.

---

[1] The trial court dismissed claims made by plaintiff against town attorney Kilmartin. This aspect of the case was not appealed.

[2] Both plaintiff and the trial court relied on *Velez v. Levy*, 401 F.3d 75 (2d Cir. 2005), to establish the elements of the stigma-plus claim. In a stigma-plus case, the liberty interest consists of publicized, false accusations of misbehavior combined with a tangible loss of position within the community. *Id.* at 87. A deprivation of this liberty interest may occur if the stigma-plus events are not followed by an adequate post-removal hearing. *Id.* at 90-92.

¶ 19. On April 11, 2011, plaintiff filed a second amended complaint. The filing was subsequently permitted by the trial court. As amended, the complaint sought money damages and attorney's fees on five legal theories: (1) violation of Chapter I, Article 8 of the Vermont Constitution (granting voters "right to . . . be elected into office, agreeably to the regulations made in this constitution"); (2) civil rights violation arising from the selectboard's actions in demanding an increase in bonding and ousting plaintiff without a vote; (3) common law defamation; (4) tortious interference with performance of office; and (5) indemnification of legal fees pursuant to 24 V.S.A. § 901. In two decisions, the trial court granted summary judgment to the Town on all five claims.

¶ 20. Plaintiff filed the first motion for summary judgment. She sought a ruling that the selectboard failed to conduct a formal vote to increase the amount of her bond from $500,000 to $1,000,000 and to declare her position vacant. Those assertions related to count 2. She also sought a ruling with respect to count 5 that 24 V.S.A. § 901(b), which requires municipalities to pay the reasonable legal fees "incurred by an officer . . . acting in the performance of his duties" obligated the Town to pay her legal fees in this case. The Town filed cross-motions for summary judgment on both counts.

¶ 21. In a detailed decision dated July 5, 2012, the trial court granted summary judgment to the Town. It analyzed the civil rights violation as a stigma-plus claim. The court determined that for purposes of summary judgment plaintiff had made out a prima facie case of a stigma-plus claim by alleging damage to her reputation through false statements by the selectboard and the related loss of her position as treasurer. The court noted that the stigma-plus claim was a constitutional claim of deprivation of liberty without due process. It considered the "process" afforded to plaintiff through her participation in multiple selectboard meetings at which her performance as treasurer and the increase in the bonding requirement were discussed openly. Plaintiff had received advance notice of the selectboard's concerns and proposed actions through the July 1 letter and the discussions at selectboard meetings during the months of April to July 2010. The court concluded that the selectboard meetings on June 28 and July 12 provided a sufficient opportunity for plaintiff to address the claims against her and to clear her name prior to the

termination of her position. Since she had received notice and an opportunity to be heard, the court granted summary judgment in favor of the Town on the stigma-plus claim.

¶ 22. The trial court also granted summary judgment to the Town on the statutory claim for attorney's fees. It determined that the decision to increase the bond limit on April 5, 2010 was a valid exercise of the selectboard's authority despite the absence of a formal vote by all three selectboard members. The court concluded that plaintiff's actions in filing suit to retain her position was not an action taken in performance of her official duties as required by § 901. The court reasoned:

> The town treasurer has many duties, which are set forth in Title 24. They include keeping accounts and investing money; appointing an assistant treasurer; recording the amount of taxes voted for town purposes; and so forth. They do not include suing the town to defend one's position as treasurer. Ms. Stone's suit against the Selectboard, which sought to prevent it from effectively deposing her from office, was a personal matter.

(Citations omitted.) Since plaintiff was not fulfilling her official duties in filing suit, the court concluded that she was not entitled to payment of her legal fees. The trial court's initial summary judgment disposed of counts 2 and 5 — the civil rights violation and the statutory claim for attorney's fees.

¶ 23. In October 2012, the Town moved for summary judgment on the remaining claims — the constitutional "right to be elected," common law defamation, and "tortious interference with public office." The Town argued that plaintiff's claim that she was denied her right to be elected into office was rendered moot when she lost the second election for treasurer in March 2011, that she failed to make out the elements of a claim for defamation, and that Vermont law does not recognize a cause of action for "tortious interference with performance of office."

¶ 24. The trial court granted summary judgment to the Town on all remaining counts in February 2013. The decision was based largely on procedural grounds. The court noted that plaintiff's opposition memorandum was signed by plaintiff, not her attorney, and was not supported by "affidavit, depositions or other sworn testimony as required by [Vermont Rule of Civil Procedure 56]." The trial court addressed the merits of count 1 — the right to be

elected arising under the state constitution — and concluded that Article 8 of the Vermont Constitution "does not create a right to retain the office in derogation of a lawful direction to obtain an increased bond." The court granted summary judgment on the defamation and tortious-interference claims on the ground that plaintiff had failed to support her claims with affidavits or other record evidence.

¶ 25. "We review summary judgment de novo. The same standard employed by the trial court applies here." *Handverger v. City of Winooski*, 2011 VT 134, ¶ 7, 191 Vt. 84, 38 A.3d 1158. Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. V.R.C.P. 56(a). We consider the record evidence in the light most favorable to the nonmoving party, in this case plaintiff. *Robertson v. Mylan Labs., Inc.*, 2004 VT 15, ¶ 15, 176 Vt. 356, 848 A.2d 310 (noting that "nonmoving party receives the benefit of all reasonable doubts and inferences").

## II. First Summary Judgment Order

¶ 26. We consider the trial court's rulings in the order they were made: first, the decision granting summary judgment with respect to counts 2 and 5 and second, the later decision concerning counts 1, 3 and 4.

### A. Count 2 — Civil Rights Violation

¶ 27. ▪ We begin with plaintiff's claim that the Town damaged her reputation without providing her with an opportunity to clear her name in violation of the Due Process Clause of the Fourteenth Amendment. "To maintain a procedural due process action against a governmental entity, a plaintiff must show that he was deprived of interests protected by the Fourteenth Amendment." *LaFlamme v. Essex Junction Sch. Dist.*, 170 Vt. 475, 480, 750 A.2d 993, 997 (2000). Once a deprivation is established, it must be determined what process is due. *Hegarty v. Addison Cnty. Humane Soc'y*, 2004 VT 33, ¶ 18, 176 Vt. 405, 848 A.2d 1139. "Though the required procedures may vary according to the interests at stake in a particular context, the fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Langlois v. Dep't of Emp't & Training*, 149 Vt. 498, 501, 546 A.2d 1365, 1367 (1988) (quotation and alterations omitted).

¶ 28. ■ Plaintiff's claim of reputational damage is frequently described as a stigma-plus claim. An individual may sue for reputational damages under 42 U.S.C. § 1983 if he or she can meet two criteria: damage to public standing through governmental action without a hearing or opportunity to contest the action plus an accompanying tangible loss such as discharge from government employment. *Herrera v. Union No. 39 Sch. Dist.*, 2009 VT 35, ¶¶ 11-13, 186 Vt. 1, 975 A.2d 619 (citing *Paul v. Davis*, 424 U.S. 693, 701-02 (1976)). Such claims are called stigma-plus claims. The injury to reputation alone — the stigma — is insufficient to amount to a deprivation of liberty without some additional tangible loss — the plus — such as termination of employment. See *Owen v. City of Independence*, 445 U.S. 622, 633 n.13 (1980) (discussing both requirements). The stigma-plus formulation is widely accepted today as a constitutional analog to common law defamation in cases involving statements and other actions by government officials. See generally E. Mitnick, *Procedural Due Process and Reputational Harm: Liberty as Self-Invention*, 43 U.C. Davis L. Rev. 79 (2009).

¶ 29. The trial court applied this test, setting forth the elements as follows:

> To prove a stigma-plus claim, the plaintiff must first demonstrate that the government made stigmatizing statements about her — statements that call into question the plaintiff's good name, reputation, honor, or integrity. Second, the plaintiff must show that these statements were made public. Third, the plaintiff must show some tangible and material state-imposed burden in addition to the stigmatizing statement.

(Quotations and citations omitted.)

¶ 30. In considering the sufficiency of the record to overcome the motion for summary judgment directed to the stigma-plus claim, the trial court appropriately considered the evidence in the light most favorable to plaintiff. *Samplid Enters., Inc. v. First Vt. Bank*, 165 Vt. 22, 25, 676 A.2d 774, 776 (1996) ("In determining whether a genuine issue of fact exists, the nonmoving party receives the benefit of all reasonable doubts and inferences."). Based on this evidence, the trial court found there was a sufficient basis to conclude that plaintiff was falsely accused and removed from office. As the trial court wrote:

Ms. Stone alleged that the Selectboard made false statements about her in a letter which was published to at least one insurer, VLCT, as well as in phone calls to bonding companies, which resulted in her inability to get a bond. This satisfies the "stigma" prong. In addition, the Selectboard's decision to raise Ms. Stone's bond, coupled with its alleged defamatory communications to the bonding companies, amounted to adverse action by the government that resulted in Ms. Stone's de facto removal from office.

¶ 31. The trial court determined, however, that the "predeprivation hearings," especially the hearing on July 12 following the issuance of the July 1 letter, provided plaintiff with "an adequate opportunity to be heard." The trial court quoted at length from the transcript of the July 12 hearing and concluded that at that hearing plaintiff was indeed given an opportunity to express herself before the selectboard.

¶ 32. ■ When the facts are construed in a light most favorable to plaintiff, we disagree that the hearing provided plaintiff a meaningful opportunity to be heard. Determining the type of process due requires examination of three factors: the private interest at stake; the risk of an erroneous deprivation of that interest through the procedure used relative to other available procedures; and the governmental interest, including any increased administrative burden. *Langlois*, 149 Vt. at 502, 546 A.2d at 1367 (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). In assessing these factors in the context of this case, the first factor favors a high level of process. Plaintiff has a strong private interest at stake since any damage to her reputation can affect her standing in the community and her future prospects for town office. See *Patterson v. City of Utica*, 370 F.3d 322, 336 (2d Cir. 2004). Because plaintiff claims she was effectively terminated by the Town's actions, her interest in the matter is elevated. *Id.* at 337 (noting that strength of private interest increases where employee is terminated and where stigmatizing statements will affect plaintiff from obtaining future employment in her profession). At the same time, the selectboard has an interest in making and explaining its decision. *Segal v. City of New York*, 459 F.3d 207, 215 (2d Cir. 2006). As to the remaining factor, the risk of an erroneous deprivation depends in large part "on the effectiveness

of the procedures available and the promptness by which they are afforded." *Id.*

¶ 33. The facts considered in the light most favorable to the nonmoving party are as follows. Immediately following plaintiff's election, she was treated unfairly by a selectboard that was influenced by the town clerk — her rival in the election. In an effort to remove her from office, the selectboard doubled her bond requirement following a secret meeting on July 1. The Town's attorney and the selectboard members contacted all likely sources for the additional insurance coverage and made false statements about her to ensure that no company would accept the increased risk. The board sent plaintiff a letter on July 1, detailing several accusations, including mismanagement, lying and fabrication of evidence. The letter was also sent to potential insurers. Plaintiff appeared at the July 12 selectboard meeting and asked to be put on the agenda. She requested that the board reconsider the bond increase and attempted to defend her performance. She was told by one member:

> [I]t's driving me crazy. Every friggen meeting we come down it's the same rehash. And I'm not taking sides, I'm not — I'm — I'm [on the] side of Irasburg. I'm [on the] side of Irasburg.
>
> . . . .
>
> I'm sick of it.
>
> . . . .
>
> Half the people in town are sick of it. I'm hearing this every time. Will you guys get this shit behind you and get it done.
>
> . . . .
>
> None of us have done it. This is the law. This is the way the state has set things up to run.

¶ 34. When plaintiff complained that town representatives were calling the bonding companies to make certain they would not issue the new bond, another selectboard member responded:

> We're not — we're not — we're not dropping the increase in the bond, I can tell you that right now.
>
> . . . .

To total of $1 million that you would have, $1 million in coverage. Now 500,000 for right now and you need an additional 500,000 to add up to a million.

. . . .

You need to work on it and let us know.

¶ 35. ■ Plaintiff presented sufficient evidence to demonstrate a question of fact as to whether the July 12 hearing adequately protected her due process rights. To remedy a stigma-plus violation through a post-deprivation name-clearing hearing, due process requires more than a chance to speak. It requires an opportunity to clear one's name before a body which is sufficiently neutral that a person has some realistic chance of success. See *Patterson*, 370 F.3d at 335 (explaining that post-deprivation hearing must give plaintiff "opportunity to hear and answer first-hand any stigmatizing charges, clearing his name of any false statements made about him, and curing the injury to his reputation").

¶ 36. ■ ■ According to plaintiff, she initiated the interaction on July 12 by appearing at the hearing and requesting that the selectboard reconsider raising the bond. While the selectboard granted her request and offered her an opportunity to speak, the members made no statement of the allegations against plaintiff at that time. Because the selectboard did not provide notice in advance, plaintiff had little opportunity to address each allegation in turn. Further, the transcript of the hearing creates a question of fact as to whether plaintiff had sufficient opportunity to defend herself at the meeting. The selectboard members' comments were rude and dismissive. There was no occasion for plaintiff to question the key individuals involved in the allegations or to present her own evidence on the substance of the allegations. Cf. *Campbell v. Pierce Cnty.*, 741 F.2d 1342, 1346 (11th Cir. 1984) (concluding that process afforded was adequate where claimant was afforded notice of charges and provided with "opportunity to hear and cross-examine all adverse witnesses and to attempt to rebut their claims").[3] A factfinder reviewing the above-quoted heated exchange — which is typical of the statements made at the

---

[3] There is a split among the federal circuit courts as to whether there must be an opportunity to cross-examine witnesses at a name-clearing hearing to satisfy due process. Compare *Campbell*, 741 F.2d at 1345 ("While the features of such a hearing itself have been prescribed with substantial flexibility, courts have required

July 12 meeting — could reasonably conclude that the selectboard failed to grant plaintiff a sufficient opportunity to clear her name.[4] It was error to make a contrary factual determination in favor of the Town in the context of summary judgment.

¶ 37. ██ ██ On a final note, on appeal, plaintiff claims that she was entitled to a predeprivation hearing prior to receiving the July 1, 2010 letter. We conclude plaintiff was not entitled to such a hearing in this case. While deprivations of a property interest require a predeprivation hearing, when there is a deprivation of a liberty interest, the process required is a post-deprivation name-clearing hearing. See *Herrera*, 2009 VT 35, ¶ 13 ("When both the 'stigma' and the 'plus' are present, the remedy for the due process violation is a post-deprivation opportunity for the plaintiff to clear his name." (quotation and alteration omitted)). This makes practical sense in this case because the reputational damage that forms part of the stigma-plus claim did not occur until after receipt and publication of the July 1, 2010 letter. See *Campbell*, 741 F.2d at 1345 (explaining that identification of claim as a deprivation of liberty interest is dispositive of question of whether predeprivation hearing is required and noting that factual predicate for claim did not occur until after termination).

---

that the claimant have notice of the charges which have been raised against him, and an opportunity to refute, by cross-examination or independent evidence, the allegations which gave rise to the reputational injury."), with *Gunasekera v. Irwin*, 678 F. Supp. 2d 653, 663-64 (S.D. Ohio 2010) (noting circuit split, joining reasoning of Fourth and Seventh Circuits, and concluding that cross-examination not required at name-clearing hearing). Because the purpose of the hearing is not to determine the correctness of the discipline, but to allow an opportunity to clear one's name, we hold that an opportunity for formal cross-examination is not always required to satisfy due process. The formality and procedural requirements of the hearing vary depending on the interests at stake. Nonetheless, there must be a meaningful opportunity to counter the allegations by argument, "and if necessary, by proof, however informal." *Endicott v. Huddleston*, 644 F.2d 1208, 1216 (7th Cir. 1980). Here, there was sufficient controverted evidence to create a question of fact regarding the opportunity plaintiff had to refute the charges against her.

[4] Other courts have rejected the contention that due process requires a differently composed tribunal than the one that rendered the challenged decision. See *Campbell*, 741 F.2d at 1346 (explaining that because purpose of name-clearing hearing is not to revisit decision, but to clear name, "the fact that the tribunal was composed of members of the Board of Commissioners did not impair its ability to preside in an acceptably impartial manner"). Therefore, the fact here that the July 12 hearing was conducted before the same board that imposed the bond increase does not in itself impair the adequacy of the hearing.

¶ 38. Plaintiff also contends that the Town deprived her of a property interest when the selectboard raised her bond and then made it impossible for her to obtain such a bond, effectively dismissing her from her position. In December 2010, in ruling on the Town's motion to dismiss plaintiff's § 1983 claims, the court concluded that plaintiff lacked a property interest in her elected position, and therefore had failed to state a claim for relief under § 1983 for deprivation of a liberty interest. On appeal, plaintiff renews her claim, and argues that she had a property interest in not being unlawfully ousted from office.

¶ 39. ██ ██ We agree with the trial court that plaintiff did not have a property interest in her elected position. The U.S. Supreme Court has so held for some time. In *Taylor v. Beckham*, 178 U.S. 548, 577 (1900), the Court stated: "The decisions are numerous to the effect·that public offices are mere agencies or trusts, and not property as such. . . . In short, generally speaking, the nature of the relation of a public officer to the public is inconsistent with either a property or a contract right." Thus, the Court held that removal of an elected officer did not amount to a deprivation of a property interest under the Fourteenth Amendment. *Id.* at 580; see *Velez*, 401 F.3d at 85 (holding that elected school board member's claim that she was improperly removed from office did not establish deprivation of property interest protected by Fourteenth Amendment). The majority of courts agree that holding onto public office is not a property interest. *Slawik v. State*, 480 A.2d 636, 642-44, 644 n.9 (Del. 1984) (explaining that federal and state courts have consistently held that public officials do not have a property right to office and citing cases). This Court has rejected the notion that public officials have a property interest in serving out their entire elected term. See *Brennan v. Town of Colchester*, 169 Vt. 175, 179-80, 730 A.2d 601, 605 (1999) (holding that planning commission members did not have property interest in serving entire term where statute stated commissioners could be removed "at any time"). As an elected official, plaintiff did not have a property interest in retaining her position in the absence of the liberty claim compensable in the stigma-plus context. Therefore, the court did not err in granting judgment to the Town on the claim of deprivation of a property interest.

## B. Count 5 — Legal Fees Under 24 V.S.A. § 901

¶ 40. Under 24 V.S.A. § 901(b), a municipality is required to "assume all reasonable legal fees incurred by an officer when the officer was acting in the performance of his duties and did not act with any malicious intent." In her complaint, plaintiff claimed that her legal fees should be paid by the Town because she was acting in performance of her duties when she brought legal action to reclaim her office. The trial court concluded that plaintiff was not entitled to payment of legal fees because her lawsuit was filed not to further one of her duties, but instead was a personal matter in which she sought to defend her position as treasurer.

¶ 41. On appeal, plaintiff argues that her suit was not a personal matter, but the sole means for her to enforce her right to engage in the duties to which she was elected. As part of this claim, plaintiff argues that the Town did not lawfully remove her from office because the selectboard did not have the power to raise her bond without a public meeting and a vote. Plaintiff argues that because her removal was not effectuated lawfully, her suit was in furtherance of her duties, and therefore the Town was required to pay for her legal fees under § 901(b).

¶ 42. According to plaintiff, 24 V.S.A. § 832 requires the selectboard to provide notice, deliberate and take an official vote before requiring an increase in a bond. Plaintiff claims that the selectboard did not hold a public meeting or vote to increase plaintiff's bond prior to sending the July 1, 2010 letter and therefore she still validly held office. There is both a factual and legal question encompassed in plaintiff's argument — whether the selectboard was required by the statute to take an official vote and whether the facts demonstrate that the selectboard indeed voted. Under § 832:

> If the selectboard at any time considers a bond of any such officer or employee to be insufficient, it may require, by written order, the officer or employee to give an additional bond in such sum as it deems necessary. If an officer or employee, so required, neglects for ten days after such request to give such original or additional bond, his or her office shall be vacant.

¶ 43. ■■■ We need not reach plaintiff's argument that the selectboard did not take a formal vote prior to raising her bond

and that she therefore still held office until the election vote. Regardless of whether the selectboard followed the correct procedures under § 832 when it raised plaintiff's bond requirement, we conclude the intent of § 901 is not to provide attorney's fees to municipal employees who have disputes with the town regarding the termination of their employment.

¶ 44. ■ In construing the statutory language, "[o]ur main purpose must be to find the intent of the Legislature based on a review of the entirety of the statutory scheme. Where the meaning of the words chosen is plain, we must give effect to the words chosen." *Smith v. Town of St. Johnsbury*, 150 Vt. 351, 355, 554 A.2d 233, 237 (1988) (citation omitted).

¶ 45. ■ Here, the statute states that the Town is required to "assume all reasonable legal fees incurred by an officer when the officer was acting in the performance of his duties and did not act with any malicious intent." 24 V.S.A. § 901(b). By its plain language, the provision is limited to payment of attorney's fees when the officer was "acting in the performance of his duties." *Id.* It permits reimbursement for the cost of defending a treasurer sued in the course of his or her work. It does not, however, require the Town to assume plaintiff's legal fees in this type of personal action to recover damages against the Town for improper removal from office.

¶ 46. ■ ■ The intent of this subsection is illuminated by looking at the entirety of § 901. The section is entitled "Actions by or against town officers." Subsection (a) indicates that when an action is brought by an appointed or elected municipal officer, "the action shall be brought in the name of the town in which the officer serves," or if the action is brought against an officer, it should be brought against the town. This indicates that the Legislature intended § 901 to cover those actions in which the interest of the officer is coextensive with the interest of the town such that substitution of the town's name with the officer's name does not alter the nature of the action. Here, plaintiff is asserting a right that is personal to her and not simply in pursuit of the town's interests. We conclude that the intent of § 901 was not to require a municipality to reimburse a town officer for legal fees incurred in a dispute with the municipality about the officer's position.

¶ 47. Plaintiff cites two out-of-state cases in support of her position that § 901 was intended to allow a municipal officer to be reimbursed for legal fees when the officer was forced to bring an action against the municipality. Although we examine each case, we note that generally out-of-state cases on this topic are not particularly helpful because the statutory language involved is unique.

¶ 48. The first case involved a school superintendent, who was joined as a necessary party in a suit by the town council against the board of education seeking to enjoin an agreement between the superintendent and the board. *King v. Bd. of Educ. of Watertown*, 486 A.2d 1111 (Conn. 1985). The relevant statute provided that the board of education is responsible for legal fees incurred by an employee if the suit is "arising out of any claim, demand, suit or judgment by reason of alleged negligence or other act" provided that the employee "was acting in the discharge of his or her duties or within the scope of employment or under the direction of such board of education." Conn. Gen. Stat. Ann. § 10-235(a). The trial court denied fees, concluding that the statute applied only to actions for damages. *King*, 486 A.2d at 1114. The appeals court emphasized that it was reviewing solely this single issue and not whether the superintendent's actions fell within the scope of his employment. *Id.* at 1114 n.4. The court reversed, holding that the statute was not limited to damage claims, but extended to suits for injunctive relief. *Id.* at 1115-16. There are obvious factual differences between plaintiff's situation and the facts of *King*, including that plaintiff initiated this action while the superintendent in *King* was joined as a necessary defendant in the suit. Most importantly, however, *King* does not assist plaintiff because it did not reach the relevant factual and legal question of whether the superintendent was acting in the scope of his employment when he signed the stipulation. *Id.* at 1114 n.4.

¶ 49. The other case cited by plaintiff is closer factually, but did not rely upon a statute at all. In *Ferrara v. Caves*, 475 So. 2d 1295, 1299-1300 (Fla. Dist. Ct. App. 1985), the court held that the town was required to pay the reasonable attorney's fees of the city mayor and town commissioners who brought a declaratory judgment action alleging that a recall petition that was filed was legally insufficient. The court's decision was not based on statute, but on common law in Florida, which allows a public official "to a defense at the public expense in defending suits or misconduct

charges while performing his public duties and while serving a public purpose." *Id.* at 1299 (citing *Lomelo v. City of Sunrise*, 423 So. 2d 974, 976 (Fla. Dist. Ct. App. 1982)).[5] Because of the unique common law rule in Florida, this case is not persuasive on how best to interpret Vermont's statute.

¶ 50. In sum, neither case compels a ruling in plaintiff's favor. While some states have granted attorney's fees in like situations, there are equally states that have not. See, e.g., *Castner v. City of Minneapolis*, 99 N.W. 361 (Minn. 1904); *Leo v. Barnett*, 369 N.Y.S.2d 789, 792 (App. Div. 1975) (holding that municipality not liable to pay attorney's fees of town officers wrongfully removed from office). The relevant inquiry is the intent of the Legislature in drafting the statute, and its language and subject matter indicate that it was not intended to cover cases such as this. If plaintiff prevails, she may be entitled to attorney's fees under § 1983, but § 901 does not provide such a right.

### III. Second Summary Judgment Order

¶ 51. In February 2013, the trial court granted summary judgment to the Town on counts 1, 3 and 4 — violation of Article 8 of the Vermont Constitution, common law defamation, and tortious interference with performance of office. The court based its decision largely on procedural grounds, concluding that plaintiff had failed to adequately oppose summary judgment. The court ruled that plaintiff as the nonmoving party had failed to properly demonstrate issues of material fact because her response to summary judgment was not supported by affidavit, deposition or other sworn testimony. We conclude that the procedural grounds for granting the motion were inadequate and that the record in this case, including the July 1 letter and plaintiff's affidavit, which were attached to the Town's motion for summary judgment, clearly demonstrates the presence of contested facts and a record which — if the evidence favoring plaintiff is believed — could support a judgment in her favor after trial.[6]

---

[5] There is a relevant statute in Florida, but it is limited to recovery of fees by prevailing defendants. See Fla. Stat. § 111.07 (1981).

[6] We also reject the trial court's ruling that plaintiff's signature on her responsive motion is grounds for granting summary judgment. Plaintiff signed "on behalf" of Attorney Merriman — evidently because the memorandum was completed at the last minute. Attorney Merriman's name appears in the signature block. While we cannot applaud this minimal level of compliance with Vermont Rule of Civil

¶ 52. Vermont Rule of Civil Procedure 56(c), as amended effective January 23, 2012, sets out a mandatory procedure for demonstrating that "a fact cannot be or is genuinely disputed." V.R.C.P. 56(c)(1). The party asserting that a fact is not disputed must file "a separate and concise statement of undisputed material facts" with citations to the record. V.R.C.P. 56(c)(1)(A).

¶ 53. In this case, the Town was the moving party. Although the Town included a lengthy factual discussion in its motion for summary judgment, its Rule 56(c) statement of undisputed facts was very brief. It states only that plaintiff never passed the audit process as required by the selectboard and that the Town is a member of the Vermont League of Cities and Towns. To the statement, the Town attached plaintiff's affidavit, the July 1, 2010 letter, and plaintiff's responses to written discovery. The statement of facts concludes with three complaints about plaintiff's discovery responses and attaches a copy of a letter from counsel concerning these deficiencies. There is no concise statement of the undisputed facts which would support the Town's argument that plaintiff was neither defamed nor forced unlawfully out of office.

¶ 54. If the Town's statement of undisputed facts is weak in its adherence to Rule 56(c), plaintiff's response is nonexistent. Plaintiff filed a memorandum and a response to the Town's statement, but did not file her own statement of disputed facts with reference to the record or in some other way show that the materials cited by the Town did not establish the absence of a factual dispute. V.R.C.P. 56(b), (c)(1) (allowing adverse party to file opposition and statement of disputed facts and requiring party asserting that fact is genuinely disputed to support assertion by filing statement of disputed facts supported by citation to record). In other words, the Town did not lay out an appropriate statement of undisputed facts and plaintiff made even less effort to engage in the Rule 56(c) process.

¶ 55. ▮▮ ▮▮ The requirements of Rule 56 are important and where a party does not adequately dispute a statement of undisputed facts, we have affirmed the court's acceptance of those facts as admitted. See V.R.C.P. 56(e) (stating that where party fails to properly support assertion, court may, among other options, consider fact as undisputed); *Sperling v. Allstate Indem. Co.*, 2007 VT 126, ¶ 19, 182 Vt. 521, 944 A.2d 210. Here, however,

Procedure 11(a), we do not agree that it warrants entry of judgment against plaintiff.

grant of summary judgment to the Town based solely on plaintiff's failure to adequately respond was error for two main reasons. First, because the Town failed to provide a proper statement of undisputed facts with citations to the record demonstrating an absence of any controverted material fact, the burden did not shift to plaintiff to show the existence of disputed facts. See *Pierce v. Riggs*, 149 Vt. 136, 138, 540 A.2d 655, 656-57 (1987) (explaining burden does not shift to nonmoving party until moving party meets its burden of showing absence of dispute over material fact).

¶ 56. Second, plaintiff was not required to submit new evidence in support of her opposition where evidence already in the record supported her position. The parties had both previously filed motions for summary judgment, which contained detailed statements of undisputed facts, with attachments of various important documents. The trial court also conducted a two-day evidentiary hearing on the motion for preliminary injunction. Certainly, it was not the trial court's responsibility alone to search this record for factual disputes, but the court should not have turned a blind eye to the existence of this evidence either. See *Pierce*, 149 Vt. at 138, 540 A.2d at 657 (explaining that when deciding Rule 56 motion court should consider entire record, "including the affidavits, depositions, admissions, answers to interrogatories and similar material"); see also V.R.C.P. 56(c)(3) (allowing court to consider material in record even if not cited in required statement of facts). Since plaintiff's critical evidence — the July 1, 2010 letter and plaintiff's affidavit — were both attached to the Town's motion for summary judgment, it was readily apparent that disputed issues of fact existed between the parties.

¶ 57. ■ In addition, plaintiff referenced the letter and facts from her affidavit in her memorandum in response to the Town's request for summary judgment, although she failed to properly submit a statement of disputed facts · or to include specific references to the record. In effect, the court sanctioned plaintiff with dismissal of the case for failing to appropriately reference the record in her response to summary judgment. Like the rules concerning default judgment, the procedure of Rule 56 "should be liberally construed in favor . . . of resolving litigation on the merits, to the end that fairness and justice are served." *Desjarlais v. Gilman*, 143 Vt. 154, 158-59, 463 A.2d 234, 237 (1983).

¶ 58. In other circumstances, the failure of a party to follow the requirements of Rule 56 could result in the granting or denial of

the motion for reasons of process only. In this case, however, where neither party has followed the rule, such a ruling cannot be sustained. We turn now to the merits of the remaining claims.

## A. Count 1 — Violation of Chapter I, Article 8

¶ 59. In count 1, plaintiff alleged that the Town had applied 24 V.S.A. § 832, the section allowing the selectboard to raise her bond, in a manner that violated Chapter I, Article 8 of the Vermont Constitution. Article 8 provides that "all voters . . . have a right to . . . be elected into office, agreeably to the regulations made in this constitution." Vt. Const. ch. I, art. 8. Plaintiff asserted that by improperly raising her bond and then removing her from office, the selectboard unlawfully invalidated the town vote, which elected plaintiff as treasurer. The court considered this claim on the merits and concluded that Article 8 "does not create a right to retain the office in derogation of a lawful direction to obtain an increased bond." Thus, the court held that the Town's decision to require an increased bond under § 832 did not amount to a constitutional violation.

¶ 60. ■■■ On appeal, plaintiff does not present any argument related to this claim. Although plaintiff argues that the court erred in granting summary judgment on procedural grounds, the court's decision on this count was not based on procedural considerations, but on the substance of plaintiff's claim. Absent some argument about why the court's decision was error, appellant has waived consideration of this issue on appeal. See *State v. Brillon*, 2010 VT 25, ¶ 5, 187 Vt. 444, 995 A.2d 557 (declining to consider state constitutional claim where it was insufficiently raised and briefed); *State v. Taylor*, 145 Vt. 437, 439, 491 A.2d 1034, 1035 (1985) (concluding appellant failed to adequately raise issue where brief contained "no specific grounds for the claim" and explaining that this Court's role is not "to foretell, through the art of divination, those issues which the parties deem appropriate for resolution").

## B. Count 3 — Defamation

¶ 61. ■■■ As to count 3, defamation, the court considered the six required elements:

The general elements of a private action for defamation (libel and/or slander) are: (1) a false and defamatory

statement concerning another; (2) some negligence, or greater fault, in publishing the statement; (3) publication to at least one third person; (4) lack of privilege in the publication; (5) special damages, unless actionable per se; and (6) some actual harm so as to warrant compensatory damages.

*Lent v. Huntoon*, 143 Vt. 539, 546-47, 470 A.2d 1162, 1168 (1983) (footnote omitted). Noting that truth is a complete defense to defamation, the court concluded that plaintiff had presented nothing more than mere allegations to support her view that there was a dispute of fact as to the veracity of the Town's statements in the July 1, 2010 letter. The court also concluded that plaintiff had failed to support by affidavit or otherwise her contention that the defaming comments caused her damage. Therefore, the court granted summary judgment to the Town.

¶ 62. ▉ The court's decision is wholly based on plaintiff's failure to follow the procedural requirements of Rule 56. For the reasons explained above, it was error for the court to grant the Town summary judgment on this basis alone, given the Town's own failure to comply with the rule and the substantial evidence in the record. The Town did not delineate in its statement of undisputed facts or support with citation to the record that plaintiff agreed the statements in the July 1, 2010 letter were true or that plaintiff was unharmed by any defaming comments. Further, although on appeal the Town claims that several privileges provide a complete defense to this claim, the Town's statement of fact does not establish the necessary facts to support the asserted privileges.

¶ 63. In addition, it is evident from a review of the record that plaintiff disputes the veracity of the statements in the July 1, 2010 letter, and that she contends that the defaming comments caused her damage. For example, in plaintiff's July 2010 affidavit, which was submitted along with her original complaint and request for injunctive relief, plaintiff averred that the July 1 letter made "unsubstantiated and false accusations." Therefore, important facts remained disputed, and the court's order granting summary judgment on this count is reversed.

## C. Count 4 — Tortious Interference with Office

¶ 64. ▉ Plaintiff's final claim was for tortious interference with performance of office. The court granted the Town summary

judgment, concluding that plaintiff had failed to raise a factual dispute about whether the selectboard acted maliciously and improperly in attempting to oust plaintiff from office. Just as for count 3, the court's decision here was based on a procedural shortcoming. For similar reasons, we conclude that this decision was incorrect. Because the Town did not set forth facts in its undisputed statement of fact to establish that the decisions the selectboard made relating to raising plaintiff's bond as treasurer lacked any malicious motivation, the burden to demonstrate a factual dispute on this point did not shift to plaintiff. Therefore, plaintiff's failure to respond in her reply did not warrant judgment in favor of the Town of this count.

¶ 65. ▉ We conclude, however, that the Town was entitled to judgment on other grounds. See *In re Cabot Creamery Coop.*, 164 Vt. 26, 29, 663 A.2d 940, 941-42 (1995) (explaining that this Court can affirm on different grounds than relied upon by trial court). Even when the facts are viewed in the light most favorable to plaintiff, she has failed to make a prima facie case of tortious interference.

¶ 66. ▉ ▉ Tortious interference generally refers to interference with performance of an existing contract or a prospective contractual relationship. See Restatement (Second) of Torts § 766 (2013). Under this tort, a person is liable if he "intentionally and improperly interferes with the performance of a contract . . . between another and a third person by inducing or otherwise causing the third person not to perform the contract." *Id.* While plaintiff styles her claim as one for "tortious interference with performance of office," there is no such enumerated tort in our case law, or in the law of other jurisdictions. The closest analogy, although imperfect, is tortious interference in the employment context, which has been recognized in some states. See *Fellhauer v. City of Geneva*, 568 N.E.2d 870, 877-78 (Ill. 1991) (setting out elements of tortious interference with prospective economic advantage in an employment relationship). While the elements are described by courts in various ways, under any definition of this tort, the interference with the contract or prospective advantage must come from a third party. See *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 869 P.2d 454, 459 (Cal. 1994) (delineating elements of intentional interference claim and emphasizing that tort requires interference from third party, who has no interest in

contract); *Diederich v. Yarnevich*, 196 P.3d 411, 418 (Kan. Ct. App. 2008) (affirming dismissal of tortious interference claim on grounds that claim requires interference from third party unrelated to employment contract); *Farrow v. St. Francis Med. Ctr.*, 407 S.W.3d 579, 602 (Mo. 2013) (setting forth elements of tortious interference with contract or business expectancy and explaining that action will lie against third party only); *Rutherfoord v. Presbyterian-Univ. Hosp.*, 612 A.2d 500, 507-08 (Pa. Super. Ct. 1992) (explaining that cause of action "requires three separate parties; parties to a contract or employment relationship cannot assert this cause of action against each other").

¶ 67. ▮▮ ▮▮ Here, to the extent that we can apply tortious interference with an employment relationship to plaintiff's allegation of tortious interference with performance of her office, we conclude that plaintiff has failed to meet the elements of that tort. Plaintiff alleges that selectboard members interfered with plaintiff's performance of her duties as treasurer. Because the selectboard members are agents of the Town and not third parties, plaintiff has failed to allege interference by a third party, and has not pled a prima facie case for tortious interference. See *Farrow*, 407 S.W.3d at 602-03; see *Puchalski v. Sch. Dist. of Springfield*, 161 F. Supp. 2d 395, 411 (E.D. Pa. 2001) (holding that employees acting within scope of employment were not third parties for purposes of tortious interference claim). Therefore, the court was correct to grant judgment to the Town on this count.

¶ 68. In sum, the rulings of the trial court are affirmed in part and reversed in part. Regarding the first summary judgment order, we reverse the judgment in the Town's favor on count 2, the civil rights violation, and affirm judgment for the Town on count 5, the claim for attorney's fees under 24 V.S.A. § 901. As to the second summary judgment decision, we affirm summary judgment on count 1, the violation of Article 8 of the Vermont Constitution, reverse judgment on count 3, common law defamation and affirm on count 4, tortious interference.

*Affirmed in part, reversed in part, and remanded for proceedings consistent with this decision.*