14-3925-cv(L)
Ernst v. Carrigan

**UNITED STATES COURT OF APPEALS**

**FOR THE SECOND CIRCUIT**

August Term, 2015

(Argued: November 9, 2015    Decided:   February 22, 2016)

Docket Nos. 14-3925-cv(L); 14-4025(XAP); 14-4171(CON)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

BARBARA ERNST, BARBARA SUPENO,

> Plaintiffs-Appellees-Counter-
> Defendants-Cross-Appellants

- v.-

JOHN CARRIGAN, LINDA CARRIGAN,

> Defendants-Appellants-
> Cross-Appellees,

JEFF KAUFFMAN, BARBARA KAUFFMAN,

> Defendants-Appellants-
> Counter-Claimants-
> Cross-Appellees,

TOWN OF ADDISON,

> Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

Before:     JACOBS, LEVAL, and LYNCH, <u>Circuit Judges</u>.

Feuding over local governance matters in Addison, Vermont led two couples to write, distribute, and vocalize allegedly defamatory statements about a third couple.   A suit for defamation (among other claims) was countered by special motions to strike under Vermont's anti-SLAPP statute, which the district court granted in part and denied in part.   The threshold issue is whether we have appellate jurisdiction over the district court's order passing on the merits of the defendants' special motions to strike under Vermont's anti-SLAPP statute. We conclude that interlocutory appeals of such orders do not fall within the collateral order doctrine, and accordingly determine that we lack jurisdiction over this appeal.

Dismissed for lack of appellate jurisdiction.

> DAVID BOND, Law Office of David Bond, PLLC, Burlington, VT, <u>for Plaintiffs-Appellees-Counter-Defendants-Cross-Appellants</u>.
>
> JOHN A. SERAFINO, Ryan, Smith & Carbine, Ltd., Rutland, VT, <u>for Defendants-Appellants-Cross-Appellees</u>.

MICHAEL J. TIERNEY (William Ellis, McNeil, Leddy & Sheahan & Sheahan, PC, Burlington, VT; Andrew C. Box, Ellis, Boxer & Blake, PLLC, Springfield, VT, on the brief), Wadleigh, Starr & Peters, PLLC, Manchester, NH, for Defendants-Appellants-Counter-Claimants-Cross-Appellees.

DENNIS JACOBS, Circuit Judge:

Feuding over local governance matters in Addison, Vermont led two couples – John and Linda Carrigan (the "Carrigans") and Jeff and Carol Kauffman (the "Kauffmans") – to make allegedly defamatory statements about a third couple, Barbara Ernst and Barbara Supeno. Ms. Ernst and Ms. Supeno sued for defamation (among other claims) and the Carrigans and Kauffmans responded by filing special motions to strike under Vermont's anti-SLAPP statute. The suit, originally filed in state court, was removed by the defendants to the United States District Court for the District of Vermont (Crawford, J.) because the plaintiffs included a federal claim under 42 U.S.C. § 1983. The district court granted the motions in part and denied in part. The threshold issue is whether we have appellate jurisdiction over the district court's order passing on the merits of the defendants' special motions to strike under

3

Vermont's anti-SLAPP statute. We conclude that interlocutory appeals of such orders do not fall within the collateral order doctrine, and accordingly dismiss for lack of appellate jurisdiction.

Things got out of hand in April 2011, when (it is alleged) the defendants wrote and circulated a defamatory letter to numerous Addison residents, and made defamatory statements (and presented a defamatory document) to the town's Selectboard (a local governing body). Pursuant to Vermont's anti-SLAPP statute, defendants filed special motions to strike plaintiffs' claims. SLAPP is an acronym for a "strategic lawsuit against public participation," which is a suit that is brought primarily to chill the valid exercise of a defendant's right to free speech, and Vermont's anti-SLAPP statute is designed to provide for early dismissal of such lawsuits.

The district court concluded that the circulation of the April 2011 letter was not covered by Vermont's anti-SLAPP statute because it did not concern an issue of public interest, but that the statements and document presented at the Selectboard meeting were covered because they were made at a legislative proceeding. Ernst v. Kauffman, 50 F. Supp. 3d 553, 563-65 (D. Vt. 2014). The district court further determined that Ms. Ernst and Ms. Supeno did not sustain

4

their burden of showing that the document and statements were "devoid of any reasonable factual support" or "any arguable basis in law," 12 V.S.A. § 1041(e)(1)(A).

The parties cross-appealed. Because we conclude that interlocutory appeals from such orders do not fall within the collateral order doctrine, we dismiss for lack of appellate jurisdiction.

## BACKGROUND

Ms. Ernst and Ms. Supeno have been embroiled in multiple zoning disputes with their neighbors. They allege that several of their neighbors, including the Carrigans, are hostile to them because they are a same-sex couple; that this hostility has been encouraged by several town officials, including Jeff Kauffman, who is the chairman of the Addison Selectboard and was the town's zoning and planning administrator; and that Mr. Kauffman and Addison have for that reason discriminated against them in zoning decisions.

On April 11, 2011, an anonymous nine-page letter was sent to numerous Addison residents, including all members of the Selectboard, school board, planning board, and development review board, as well as local newspapers. Entitled "The TRUTH About the BARBARAS," the letter contained information

5

drawn from police reports and court records that supposedly demonstrated that Ms. Ernst and Ms. Supeno were "masters at falsifying information, using harassment as a crutch whenever confronted in their demonical schemes, lying openly, distorting facts, and using the court system for extortion." Ernst, 50 F. Supp. 3d at 557. The letter further asserted that Ms. Ernst and Ms. Supeno were "felons who are running scams" who do not pay their creditors or taxes. Id.

It is alleged that Carol Kauffman wrote the letter with information provided to her by Linda Carrigan and Jeff Kauffman, that John Carrigan distributed copies of the letter to Addison residents from April 11-14, 2011, that Carol Kauffman read aloud from the letter at Selectboard meetings during the summer of 2011, that John Carrigan presented a document summarizing the letter to the Selectboard in November 2011, and that Carol Kauffman sent a separate letter to Ms. Ernst and Ms. Supeno's attorney (purporting to be from them) that implied he would not be paid for his services.

Ms. Ernst and Ms. Supeno filed suit against the Kauffmans, Carrigans, and Addison in Vermont state court. The complaint included, inter alia, state-law claims for defamation, false-light invasion of privacy, and tortious interference against the Kauffmans and Carrigans. After the case was removed to federal

6

court, the Carrigans and Kauffmans filed special motions to strike Ms. Ernst and Ms. Supeno's claims pursuant to Vermont's anti-SLAPP statute, 12 V.S.A. § 1041. The motions sought to strike allegations relating to: (i) the April 2011 letter, (ii) the statements made before the Selectboard, (iii) the document presented to the Selectboard, and (iv) the letter to the lawyer for Ms. Ernst and Ms. Supeno. The district court granted the motions to strike allegations (ii) and (iii), but denied the motions to strike (i) and (iv). After the district court declined to certify the opinion for interlocutory appeal, the parties cross-appealed.

As relevant here, the Kauffmans and Carrigans appeal the denial of their motion to strike the claims arising out of the April 2011 letter, and Ms. Ernst and Ms. Supeno appeal the grant of the Kauffmans' and Carrigans' motions to strike statements made before the Selectboard and the document presented to that body.

## DISCUSSION

Our appellate jurisdiction over district court rulings is limited to "final decisions." 28 U.S.C. § 1291. The Supreme Court has long construed "final decisions" to include judgments that "terminate an action" as well as a "small class" of collateral rulings that are deemed "final" despite not ending the

7

litigation.   Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 545-56 (1949).

This "small class" resolves "claims of right separate from, and collateral to, rights

asserted in the action" that are "too important to be denied review and too

independent of the cause itself to require that appellate consideration be deferred

until the whole case is adjudicated."   Will v. Hallock, 546 U.S. 345, 349 (2006).

Such an order must "[1] conclusively determine the disputed question, [2]

resolve an important issue completely separate from the merits of the action, and

[3] be effectively unreviewable on appeal from a final judgment."   Id.   The

limited scope of the collateral order doctrine stems from "a healthy respect for

the virtues of the final-judgment rule[;]" so the "justification for immediate

appeal must . . . be sufficiently strong to overcome the usual benefits of deferring

appeal until litigation concludes."   Mohawk Indus. Inc. v. Carpenter, 558 U.S.

100, 106 (2009).

## I

Vermont's anti-SLAPP statute creates a two-step process for determining

whether statements or conduct is protected by the statute.   First, the defendant

must show that the case arises from defendant's exercise of "the right to freedom

of speech or to petition the government" and that the speech or petition is "in

connection with a public issue." 12 V.S.A. § 1041(a). If the defendant does that, the burden shifts to the plaintiff to show that the defendant's conduct or statement was "devoid of any reasonable factual support" or "any arguable basis in law" and "caused actual injury to the plaintiff." Id. § 1041(e)(1); see, e.g., Felis v. Downs Rachlin Martin, PLLC, 2015 VT 129, ¶ 32 (2015). To decide such motions, courts look to the "pleadings and supporting and opposing affidavits." 12 V.S.A. § 1041(e)(2).

The question is whether district court orders ruling on the merits of special motions to strike filed under Vermont's anti-SLAPP statute fall within the collateral order doctrine. We conclude that they do not.[1]

**A**

An appeal from an order passing on the merits of a special motion to strike filed under Vermont's anti-SLAPP statute does not fulfill the second requirement for an appealable collateral order: that it "resolve an important issue *completely separate from the merits* of the action." Will, 546 U.S. at 349 (emphasis added).

---

[1] Because we conclude that we lack appellate jurisdiction, we do not reach the issue of whether Vermont's anti-SLAPP statute is applicable in federal court. Compare Abbas v. Foreign Policy Grp., LLC, 783 F.3d 1328, 1333-37 (D.C. Cir. 2015) (holding that a state anti-SLAPP statute is inapplicable), with U.S. ex rel. Newsham v. Lockheed Missiles & Space Co., Inc., 190 F.3d 963, 973 (9th Cir. 1999) (holding that a state anti-SLAPP statute is applicable).

An issue is "completely separate from the merits" if it is "significantly different" and "conceptually distinct" from the "fact-related legal issues that likely underlie the plaintiff's claim on the merits." Johnson v. Jones, 515 U.S. 304, 314 (1995).

Courts necessarily evaluate in detail the merits of a plaintiff's claim when considering a defendant's special motion to strike. The anti-SLAPP statute instructs the court to consider the "pleadings and supporting and opposing affidavits" when weighing whether the plaintiff has shown that the defendant's conduct or statement was "devoid of any reasonable factual support" or "any arguable basis in law" and "caused actual injury to the plaintiff." 12 V.S.A. § 1041(e). Such analysis is entangled in the facts, and plainly is not "*completely separate* from the merits" of a plaintiff's action. Will, 546 U.S. at 349 (emphasis added).

Consider the defamation claim in this case. Under Vermont law, Ms. Ernst and Ms. Supeno must establish: (i) a false and defamatory statement; (ii) negligence; (iii) publication; (iv) lack of privilege; (v) special damages unless the statement is actionable per se; and (vi) actual harm to warrant compensatory damages. See Stone v. Town of Irasburg, 2014 VT 43, ¶ 61 (2014). To decide the anti-SLAPP motions, the district court had to decide whether Ms. Ernst and

10

Ms. Supeno had shown that the defendants' statements or conduct were "devoid" of "any arguable basis in law," "devoid" of "any reasonable factual support" based on the "pleadings and supporting and opposing affidavits," and had "caused actual injury." 12 V.S.A. § 1041(e). In deciding the anti-SLAPP motions, the district court properly looked at "the filings" of the parties and "accompanying affidavits" to determine what defamatory statements were in fact made at the Selectboard meeting, reviewed "specific allegations" in the complaint to determine which portions of the April 2011 letter were read aloud, and considered the "affidavits attached to [Ms. Ernst and Ms. Supeno's] opposition memorandum" to determine whether the April 2011 letter was wholly false. Ernst, 50 F. Supp. 3d at 563-64. Based on its review of the record evidence, the district court concluded that the April 2011 letter "as a whole contains a mixture of true statements, false statements, and editorial characterization" such that it is not "*entirely* false," and that Ms. Ernst and Ms. Supeno therefore had not sustained their burden of showing that the statements made at the Selectboard meeting were "devoid of factual support." Id.

The district court's analysis was inescapably intertwined with the "fact-related legal issues" underlying the defamation claims. Johnson, 515 U.S.

11

at 314.   Determining whether the Carrigans' and Kauffmans' statements were "devoid of any reasonable factual support" (as Vermont's anti-SLAPP statute requires) is by no means "conceptually distinct" and "significantly different" from whether the statements were false (as Vermont defamation law requires). The same goes for consideration of whether the statements lacked "any arguable basis in law" and whether the statements were unprivileged.   The requirement of the anti-SLAPP statute that the statements "caused actual injury" is indistinguishable from the last element of a defamation claim: actual harm suffered by reason of the defamatory statements.   In sum, a special motion to strike under Vermont's anti-SLAPP statute "involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action."   Coopers & Lybrand v. Livesay, 437 U.S. 463, 469 (1978) (quotation marks omitted).

Other courts to consider the question have concluded otherwise.   For example, the Ninth Circuit, in Batzel v. Smith, 333 F.3d 1018 (9th Cir. 2003), held the separability condition was met because an order denying an anti-SLAPP motion "merely finds that such merits may exist, without evaluating whether the plaintiff's claim will succeed."   Batzel, 333 F.3d at 1025; see also Henry v. Lake

12

Charles Am. Press, L.L.C., 566 F.3d 164, 175, 177 (5th Cir. 2009); DC Comics v. Pacific Pictures Corp., 706 F.3d 1009, 1013 (9th Cir. 2013); NCDR, L.L.C. v. Mauze & Bagby, P.L.L.C., 745 F.3d 742, 749 (5th Cir. 2014). True, an anti-SLAPP motion does not *decide* the merits; but the test is whether it is *completely separate* from the merits. In effect, Batzel holds that "completely separate from the merits" means "not exactly the same." We prefer to follow the Supreme Court's holding in Johnson that "completely separate from the merits" means what it says, that is, "conceptually distinct" and "significantly different."

"But hold on, some have objected, that can't be right. [Vermont's] anti-SLAPP statute is intended to afford an immunity *from trial*, not just from liability." Makaeff v. Trump Univ., LLC, 736 F.3d 1180, 1190 (9th Cir. 2013) (Watford, J., dissenting from the denial of rehearing en banc). The question becomes whether an appeal from an anti-SLAPP ruling is an analog or subset of appeals from the denial of immunity from trial. See Will, 546 U.S. at 350-51 (discussing absolute immunity, qualified immunity, Eleventh Amendment immunity, and double jeopardy immunity). For example, appeals from the denial of qualified immunity are accepted under the collateral order doctrine, "even though part of the traditional inquiry touches on the merits." Makaeff,

13

736 F.3d at 1185 (Wardlaw and Callahan, JJ., concurring in the denial of rehearing en banc); see also Henry, 566 F.3d at 175. Thus Batzel classified anti-SLAPP protection as one of those immunities from trial. Batzel, 333 F.3d at 1025-26 (noting the "purpose of an anti-SLAPP motion is to determine whether the defendant is being forced to defend against a meritless claim"); see also Henry, 566 F.3d at 175. We disagree.

While anti-SLAPP statutes have much in common with immunity statutes, the California courts have ruled that the California statute (upon which the Vermont statute is based) does not provide a "a substantive immunity from suit." See Liberty Synergistics Inc. v. Microflo Ltd., 718 F.3d 138, 148 n.9 (2d Cir. 2013) (discussing Jarrow Formulas, Inc. v. LaMarche, 31 Cal. 4th 728, 738 (2003)). Even if the Vermont anti-SLAPP statute *does* provide immunity from trial, it does not follow that rulings on motions to strike are immediately appealable. Not every adverse ruling on a "right not to stand trial" automatically is subject to interlocutory review. See Will, 546 U.S. at 350-51; Digital Equip. Corp. v. Desktop Direct, Inc., 511 U.S. 863, 871-73 (1994). "[T]his generalization is too easy to be sound and, if accepted, would leave the final order requirement of § 1291 in tatters." Will, 546 U.S. at 351.

14

The analogy to qualified immunity does not hold together. The denial of a claim to qualified immunity falls within the collateral order doctrine because an appellate court reviewing such an order "need not consider the correctness of the plaintiff's version of the facts, nor even determine whether the plaintiff's allegations actually state a claim[;]" rather, the court only determines a "question of law" that is distinct from whether the allegations state a claim under the law at the time of the suit. Mitchell v. Forsyth, 472 U.S. 511, 528 (1985). But even in the qualified immunity context, a "*fact*-related dispute about . . . whether or not the evidence in the pretrial record was sufficient to show a genuine issue of fact for trial," Johnson, 515 U.S. at 307, is not immediately appealable because when the issue is "whether the evidence could support a finding that particular conduct occurred, the question is not truly 'separable' from the plaintiff's claim." Behrens v. Pelletier, 516 U.S. 299, 313 (1996) (discussing Johnson, 515 U.S. at 313-18). The Supreme Court has also noted that when a denial of qualified immunity turns only on the sufficiency of the evidence, "considerations of delay, comparative expertise of trial and appellate courts, and wise use of appellate resources" further counsel against immediate appellate review. Johnson, 515 U.S. at 317.

Resolution of anti-SLAPP motions turn on just such fact-based determinations. Vermont's anti-SLAPP statute requires a determination of whether the defendants' statements were "devoid" of "any reasonable factual support" based on the "pleadings and supporting and opposing affidavits." 12 V.S.A. § 1041(e). The Supreme Court has ruled that "consider[ing] the correctness of the plaintiff's version of the facts," Mitchell, 472 U.S. at 528, by "reading a vast pretrial record, with numerous conflicting affidavits, depositions, and other discovery materials," Johnson, 515 U.S. at 316, involves the court in potentially duplicative inefficiencies. We conclude, as Mitchell and Johnson make clear, that we lack appellate jurisdiction to consider the district court's order passing on the merits of the defendants' anti-SLAPP motions to strike.

**B**

This Court has touched on a similar issue before. Liberty Synergistics presented to us an appeal under the collateral order doctrine: a denial of an anti-SLAPP motion *on the ground that California's anti-SLAPP statute did not apply* because the case had been transferred from California to New York. Liberty Synergistics, 718 F.3d at 147. We held that such an order satisfied the separability requirement because the "*legal question* presented in th[e]

16

appeal – namely, whether the forum transfer made the anti-SLAPP rule inapplicable" – was "predicated on a source of law that did not apply to the suit." Id. at 149, 151.   Moreover, the district court "did not consider the underlying facts in the complaint, much less the 'merits' of the malicious prosecution claim" in rendering its opinion on the matter under interlocutory review.   Id. at 149. The "neat abstract issues of law" presented in Liberty Synergistics differ in kind from the "fact-related legal issues" underlying this appeal.   Johnson, 515 U.S. at 314, 317.

Liberty Synergistics itself recognized the operative distinction.   We first emphasized the narrowness of our Liberty Synergistics decision: it is "concerned only with the immediate appealability of an order that a state anti-SLAPP statute does not apply at all to a federal diversity case where the suit is transferred to a federal court in another state and the cause of action is governed by that other state's law."   718 F.3d at 150 n.11 (quotation marks omitted).   Then we noted that while the Ninth Circuit in Batzel had ruled on whether an order passing on the merits of an anti-SLAPP motion is immediately appealable under the collateral order doctrine, we took care to say: "[w]e need not address that issue."

Id. Now we do address that issue, and conclude that orders passing on the merits of an anti-SLAPP motion do not fall within the collateral order doctrine.

## CONCLUSION

For the foregoing reasons, we dismiss the appeal and cross-appeal for lack of appellate jurisdiction.